Daniel J. Leary and Sadie D. Leary v. Commissioner.
Leary v. Commissioner
Docket No. 104600.
United States Tax Court
1945 Tax Ct. Memo LEXIS 329; 4 T.C.M. (CCH) 88; T.C.M. (RIA) 45042; January 24, 1945
Benjamin Slade, Esq., for Sadie D. Leary alone. James T. Haslam, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax for the years 1933, 1934 and 1935 as follows: Year
Deficiency
50% Penalty
1933
$ 58,554.57
$29,690.69
1934
100,531.92
50,265.96
1935
85,472.74
43,305.55
The petitioners allege that the [*] erred in his determination of the deficiencies as follows: For the Taxable Year Ended December 31, 1933 (a) The Commissioner erred in disallowing the loss on sale of Merchants Bank Stock, $13,472.87. (b) The Commissioner erred in disallowing the loss on sale of Republic of France bonds, $2,331.00. (c) The Commissioner erred in disallowing the loss *330 on sale of securities to Agency Accounts operated in name of Frank Hayes, $66,711.93. (d) The Commissioner erred in disallowing the loss on sale of Capital Assets, $1,313.65. (e) The Commissioner erred in including in "other income" Waterbury Trust Co. Treasurer's checks purchased $20,680.00. (f) The Commissioner erred in including in "other income" Deposits made with Stock brokers on margin accounts, $43,012.70. For the Taxable Year Ended December 31, 1934 (a) The Commissioner erred in including in "other income" purchase of Waterbury Trust Co. Treasurers checks $112,686.00. (b) The Commissioner erred in including in "other income" purchase of Waterbury Brewing Co. stocks $8,500.00. (c) The Commissioner erred in including in "other income" loans advanced to Waterbury Brewing Co. $3,000.00. (d) The Commissioner erred in including in "other income" purchase of annuities $8,206.85. (e) The Commissioner erred in including in "other income" deposits on margin accounts at stock brokers $59,874.28. For the Taxable Year Ended December 31, 1935 (a) The Commissioner erred in disallowing the loss on securities $553.50. (b) The Commissioner erred in adding to Capital Net *331 Gain "Profits on sale of Electric Steam Sterilizer understated" $31,168.10. (c) The Commissioner erred in including in "other income" Waterbury Trust Co. Treasurer's checks purchased $46,425.00. (d) The Commissioner erred in including in "other income" Waterbury Brewing Co. loans advanced $15,000.00. (e) The Commissioner erred in including in "other income" International Geometer Corp. stock purchased $23,757.00. (f) The Commissioner erred in including in "other income" annuity purchased $10,147.05. (g) The Commissioner erred in including in "other income" deposits made with stockbrokers, $46,878.00. Findings of Fact The petitioners, husband and wife, were residents of Waterbury, Conn., until 1941 and the wife still is. Income tax returns for the years here in question were filed with the collector of internal revenue for the district of Connecticut. The return for 1933 was declared to be a joint return but was signed by Daniel J. Leary alone. The respondent concedes that this was not a joint income tax return. The returns for 1934 and 1935 were declared to be joint income tax returns and were signed by both husband and wife. Daniel J. Leary was comptroller of the *332 City of Waterbury, Conn., for the years 1931 to 1937, inclusive. Early in 1938 the Grand Jury returned indictments against a number of individuals in Waterbary charging them with conspiracy to cheat and defraud the City of Waterbury out of large amounts of money. More than 20 persons were indicted, among them being Daniel J. Leary, comptroller of the city, Frank Hayes, mayor of the city, and C. D. Olsen, treasurer of the Waterbury Trust Co. After a trial lasting nine months most of those indicted, including Daniel J. Leary, were convicted. Leary appealed from his conviction and was at liberty under a bail bond pending the determination of the appellate court. His conviction was confirmed but at the time the decision was announced by the appellate court Leary forfeited his bail bond and fled from the State of Connecticut. His whereabouts since then has not been known to the state authorities or to counsel of record. In 1938 the respondent began an extensive investigation of Leary's income tax returns for the years 1933, 1934 and 1935. This investigation lasted for a period of two years. The respondent determined that the returns filed for those years understated the taxable net income *333 in large amounts and that they were false and fraudulent with intent to evade tax. He has determined deficiencies in the income tax due and has added to those deficiencies the 50 percent penalty provided by statute for the filing of false and fraudulent returns. Leary's income tax return for 1933 showed a net income of $6,498.63 and a tax due of $4.99. An additional assessment of $826.81 was made on that return at some undisclosed date. The respondent determined that the correct net income was $153,986.89, resulting in a tax liability of $59,386.37 and a deficiency in income tax of $58,554.57 to which he has added a 50 percent penalty in the amount of $29,690.69. The joint income tax return for 1934 showed a net income of $23,735.58 and a tax due of $1,496.11. A refund of $328.78 was made upon the tax paid. The respondent has determined that the correct net income for 1934 is $227,218.47, resulting in a tax liability of $101,699.25 and a deficiency in income tax of $100,531.92 to which he has added a 50 per cent penalty of $50,265.96. The joint income tax return for 1935 showed a net income of $30,854.63 and a tax liability of $2,870.58. An additional assessment of $1,138.36 *334 was made on that return at some undisclosed date. The respondent has determined that the correct net income for 1935 is $206,402.86, resulting in a tax liability of $89,481.68 and a deficiency in income tax of $85,472.74 to which has been added a 50 percent penalty of $43,305.55. In the income tax return for 1933 Leary claimed a loss on the sale of 30 shares of stock of the Merchants' Trust Co. in the amount of $13,472.87. The claimed loss was disallowed since the Board of Tax Appeals had held in a Memorandum Findings of Fact and Opinion entered June 25, 1938 (Docket No. 83931) [Dec. 10,072-E], that the shares of stock of that bank became worthless in a year prior to 1933. It was upon such adjudication that the additional assessment of $826.81 for 1933, and adverted to above, was made. The claimed loss of $2,331 on the sale of Republic of France bonds in 1933 was disallowed since Leary failed to prove the cost of such bonds sold by him in 1933. In December, 1933, Leary was carrying on margin many shares of stock with the following brokerage companies: Pearl & Co., R. F. Griggs & Co., and Walter J. Fahy & Co. He obtained authority from Frank Hayes to operate margin accounts *335 with the same brokerage concerns in the name of Frank Hayes. Leary guaranteed the accounts. He withdrew from his own margin account with each broker cash with which to open the Frank Hayes' account. There was then transferred to each of the Frank Hayes' accounts shares of stock from his own margin account with the same broker. The broker charged commissions for making such transfers. In his income tax return for 1933 Leary claimed the deduction of losses upon the shares of stock thus transferred from his own margin accounts to the Frank Hayes' accounts in the total amount of $66,711.93. This deduction was disallowed by the respondent in the determination of the deficiency for 1933. All of the transactions in the Frank Hayes' accounts were by and for Leary. All of the cash paid into the accounts was paid by Leary and all withdrawals from the accounts were made by or for Leary. When the accounts were ultimately closed out Leary received the entire proceeds. In 1933 the Waterbury Trust Co. issued checks to Leary, or for his benefit, in the total amount of $20.680, funds for the purchase of which were furnished by Leary. He also during the same year made deposits with stock brokers *336 in the aggregate amount of $43,012.70. The sum of these two amounts, $63,692.70, has been added by the respondent to the taxable net income for 1933 since Leary failed and refused to give information as to where the money came from for the purchase of the checks and for the deposits with the brokers, and a careful check of all of Leary's records, bank accounts, brokerage accounts, and the records of the various corporations with which Leary was connected failed to reveal the source from which the moneys were obtained. 1934 Likewise for 1934 Leary failed or refused to give information as to where the following amounts of money used by him in 1934 came from: Purchase of Waterbury Trust Co.
Treasurer's checks
$112,686.00
Purchase of Waterbury Brewing Co.
stocks
8,500.00
Loans advanced to Waterbury Brew-
ing Co.
3,000.00
Purchase of annuities
8,206.85
Deposits on margin accounts at stock
brokers
59,874.28
Total
$192,267.13
Less: Income reported
1,880.70
Income understated
$190,386.43
The same check of all records for 1934 as for 1933 did not disclose the sources from which the $190,386.43 was received by Leary. 1935 For 1935 Leary reported *337 a gain from the sale of shares of stock of Electric Steam Sterilizing Co., Inc., in the amount of $62,336.20. He included in the joint income tax return filed for that year only $31,168.10 alleging that one-fourth of the gain was taxable income of his father, Andrew J. Leary, and one-fourth taxable income of his brother, Francis A. Leary. Leary's father and brother reported the receipt of such income in returns filed by them for 1935 and paid the tax assessed on such returns. All of the moneys used to purchase the Electric Steam Sterilizing Co., Inc. stock here in question were furnished by Leary. Leary's father and brother had no investment in the stock that was sold. The proceeds were received by and belonged in their entirety to Daniel J. Leary. Likewise Leary failed to account in the income tax return for 1935 for the following amounts determined by the respondent to be taxable income of Leary: (a) Waterbury Trust Co. Treasurer's
Checks purchased
$46,425.00
(b) Waterbury Brewing Co. loans ad-
vanced
15,000.00
(c) International Geometer Corp.
stock purchased
23,757.00
(d) Annuity purchased
10,147.05
(e) Deposits made with stockbrokers
46,878.00
Total
$142,207.05
*338 The respondent has included the abovereferred to $142,207.05 in the taxable net income because of the refusal and failure of Leary to prove to the respondent that the money was not taxable income of 1935 and since a careful check of all of Leary's financial transactions failed to show that the moneys came from his bank accounts, brokerage accounts, or other known assets or sources of income. After the respondent had completed his investigation of Leary's tax liabilities for 1933, 1934 and 1935 he caused an attachment to be made against shares of stock of the Diamond Ginger Ale Co. owned by Leary but held in the name of a nominee at Corpus Christi, Texas, and the imminent sale of them was threatened by the collector. Leary then took a train to Washington and demanded a conference with Bureau of Internal Revenue officials for the purpose of preventing such sale. He was accorded such a conference on April 23, 1940, which lasted for approximately five hours. He was then fully aware of the findings of the investigating officers and of the proposed deficiencies in income tax for the taxable years. At such conference he stated to the revenue agent, one of the conferees: "I can not and *339 will not dispute one figure you have on that return. Your items are correct and your statements are correct. I have no defense." He further stated at the conference that an alleged partnership which he had formed with his father and brother in 1932 was for the purpose of keeping him out of high surtax brackets. He said the partnership was arranged by and on the advice of his accountant and that his father and borther did not have funds to advance to him. He stated that he had advanced funds to his father and brother as well as paid many other bills for which he was never repaid. He further stated that he had set up his father in the florist business so as to get him away from the foundry work in which he had formerly been engaged. When asked what his father was worth he stated that he was financially not worth very much. He had not worked for a period of about 10 years. He also stated that the Waterbury Trust Co. Treasurer's checks had been correctly treated as income but refused to explain: that he had had loans in the Waterbury Trust Co. in the names of members of his family for bank reasons but that all loans and collateral belonged to him; that all stocks purchased through the *340 Waterbury Trust Co. and several brokerage companies belonged to him; that his father and brother did not have any money to play stocks; that he used their names to purchase and sell many stocks, and that the Electric Steam Sterilizing Co., Inc. stock was his and not theirs. Sadie D. Leary signed the income tax returns for 1934 and 1935 at the request of her husband, Daniel J. Leary. She had a small amount of income from dividends in the years 1936 and 1937. She does not know whether she had any income in 1934 and 1935 and, if so, whether any of it was included in the returns for 1934 and 1935 which she signed. Sadie D. Leary knew very little about her husband's business affairs or as to the amount of income which he had for the years 1934 and 1935. She had no knowledge that the returns signed by her were incorrect in any particular. A part of the deficiency determined for each of the years 1933, 1934 and 1935 was due to fraud with intent to evade income tax. Opinion The petition requesting redeterminations of deficiencies for the years 1933, 1934, and 1935 was prepared by Joseph Lipshie, C.P.A., of New York City. Upon receiving a notice of the hearing of this proceeding at *341 Boston on November 13, 1944, petitioners' counsel sought to withdraw from the case "owing to the disappearance of Daniel J. Leary." The right of counsel to withdraw was not granted and he was requested by Government counsel to attend the hearing and to produce all records in his possession bearing upon the liability of the petitioners for deficiencies in income tax for the years 1933, 1934 and 1935. He addressed a letter to Government counsel dated November 10, 1944, stating that he would not appear at the hearing in Boston and further stating "in view of the disappearance of my client I have no witnesses or testimony to offer in the matter, and am obliged to let the case go by default." He failed to appear at the hearing. Benjamin Slade, Esq., appeared at the hearing solely in the interest of Sadie D. Leary. The determinations of the respondent as to deficiencies in tax for the years 1933, 1934 and 1935 are prima facie correct. Since there has been no countervailing evidence the respondent's determinations of deficiencies in tax are approved. The burden of proof of showing that a part of any deficiency is due to fraud with intent to evade tax is upon the respondent. Section *342 907 of the Revenue Act of 1924 as amended by section 1000 of the Revenue Act of 1926, and further amended by section 601 of the Revenue Act of 1928. See also section 1112, Internal Revenue Code. To meet such burden the respondent has introduced in evidence a mass of exhibits to prove fraud. The principal basis for respondent's claim that a part of the deficiency determined for 1933 was due to fraud with intent to evade tax is the fact that in December, 1933, Daniel J. Leary caused a large amount of his securities held on margin in his own name with three different brokerage houses to be transferred from his accounts to like accounts opened in December, 1933, in the name of Frank Hayes. He was authorized by Frank Hayes, the then mayor of Waterbury, to use his name. Leary claimed in his return that he had sustained deductible losses of $66,711.93 from these transactions. The evidence clearly shows that all of the transactions in the ma gin accounts in the name of Frank Hayes were by Leary and for his benefit. All of the cash paid into the accounts was Leary's cash. All of the withdrawals from the accounts were by and for Leary. He sustained no deductible losses *343 from the transfer of the securities from accounts in his own name to the accounts carried in the name of Frank Hayes. This fact alone proves that the return for 1933 was false and fraudulent with intent to evade tax. The evidence also shows that in each of the years 1933, 1934 and 1935 Leary was in receipt of large amounts of money which were not reported in the income tax returns filed for those years. The investigating officers of the Government checked all the known income of Leary for those years such as salary, interest and dividends and also checked all records that he made available to them, all of Leary's bank accounts, brokerage accounts and his accounts with different corporations with which he was identified in an attempt to find out where the money came from that Leary had used to acquire Treasurer's checks from the Waterbury Trust Co., to make deposits of money with his brokers, for the purchase of insurance policies, etc. Where the investigating officers found that money had been withdrawn from any of Leary's accounts he was given credit for same. The additional amounts added to the reported net incomes were amounts which could not be identified as having come from *344 any known source. We think that the evidence shows beyond a doubt that Leary had during the taxable years in question income from unknown sources in the amounts determined by the respondent. We have no doubt that Leary was taxable upon the income from these unknown sources. His failure to report such items of income was with intent to evade income tax. We have therefore found that a part of the deficiencies determined for each of the years 1933, 1934 and 1935 was due to fraud with intent to evade income tax. The evidence also shows that after the investigating officers had completed their investigations and Leary had been advised of their findings he had a conference with the Internal Revenue Bureau officials for the purpose of preventing the sale by the collector at Corpus Christi, Texas, of certain assets belonging to Leary. At this conference he admitted the correctness of the revenue agent's findings. Counsel for Sadie D. Leary claims that any admissions made by Leary at this conference are inadmissible in evidence upon the ground that they were made in connection with an attempt to compromise tax liabilities. We agree with counsel that if the admissions had been made for *345 the purpose of compromising tax liabilities they are inadmissible in evidence. But it appears that the conference in Washington was not with respect to a compromise of tax liabilities. We have not placed our determination of fraud with intent to evade tax upon any admissions made by Leary at such conference In our opinion the proof introduced by therevenue agent with respect to the income received by Leary during the taxable years is sufficient to show fraud without any reliance whatever upon the admissions made at the conference. But such admissions are confirmatory of the determinations of the respondent. Counsel for the petitioner Sadie D. Leary argues that she is not liable for any part of the deficiencies determined to be due from the petitioners. The respondent admits that she is not liable for any part of the deficiency determined for 1933, since the return filed for that year was not a joint return of husband and wife. No issue is presented by the pleadings so far as the deficiencies in tax and penalty for the years 1934 and 1935 are concerned. We therefore find it unnecessary to discuss the question. Decision will be entered under Rule 50.